IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**UNITED STATES OF AMERICA,**             CASE NO. 3:22 CR 444

    Plaintiff,

    v.                                  JUDGE JAMES R. KNEPP II

**LARRY STEELE,**
                                                               **MEMORANDUM OPINION AND**
    Defendant.                      **ORDER**

## INTRODUCTION

Currently pending before the Court is Defendant Larry Steele's Motion to Vacate under 28 U.S.C. § 2255. (Doc. 83). The Government filed a response in opposition. (Doc. 89). Steele did not reply and the time in which to do so has expired. For the reasons set forth below, the Court denies Defendant's motion.

## BACKGROUND

Steele was indicted in a four-count Indictment on August 3, 2022. (Doc. 1). On May 24, 2023, Steele pled guilty, pursuant to a plea agreement, to three of the four charges: (1) conspiracy to possess with intent to distribute controlled substances in violation of 21 U.S.C. § 846 (Count 1); (2) felon in possession of firearms and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count 3); and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. §§ 924(c)(1)(A) and (c)(1)(A)(i) (Count 4). (Tr. 86) (transcript of change of plea hearing); Doc. 41 (plea agreement). The Government dismissed Count 2 (attempted possession with the intent to distribute fentanyl) at sentencing. (Doc. 87, at 52).

Two particular terms of the plea agreement Steele entered into provide:

**13. Sentencing Guidelines.** Defendant understands that sentencing rests within the discretion of the Court; that federal sentencing law requires the Court to impose a sentence which is sufficient, but not greater than necessary, to comply with the purposes of 18 U.S.C. § 3553(a), and that the Court must consider among other factors the advisory United States Sentencing Guidelines in effect at the time of sentencing and that in determining the sentence, the Court may depart or vary from the advisory guideline range.

* * *

**17. Acceptance of Responsibility.** The USAO has no reason to believe that Defendant has not clearly and affirmatively accepted personal responsibility for Defendant's criminal conduct. The USAO agrees to recommend a three (3) level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and (b), provided Defendant's conduct continues to reflect Defendant's acceptance of responsibility. Defendant understands it will be up to the Court at the time of sentencing to determine whether a reduction for acceptance of responsibility is appropriate.

(Doc. 41, at 3-4). The plea agreement further states that it is "[c]omplete and [v]oluntarily [e]ntered." *Id.* at 9. The factual basis contained in the agreement states, *inter alia*, that Steele knowingly conspired to possess with intent to distribute marijuana. *Id.* at 7. As discussed further below, Steele initialed each page and signed the agreement. *Id.* at 11.

At the May 24, 2023, change of plea hearing, the Assistant United States Attorney ("AUSA") described the charges and their potential sentences. (Doc. 86, at 15-16). The plea agreement also set forth these potential sentences as follows: maximum 5 years on Count 1 (21 U.S.C. § 846 drug conspiracies); maximum 15 years on Count 3 (18 U.S.C. § 922(g)(1) possession of a firearm and/or ammunition by a convicted felon); and *minimum* 5 years *consecutive* on Count 4 (18 U.S.C. § 924(c)(1)(A) possession of a firearm in furtherance of a drug trafficking crime). (Doc. 41, at 2). The Court further described how a Presentence Investigation Report would be prepared, with a recommended sentence, subsequently explaining:

> Ultimately there will be a recommended sentence to me, but it's just that. It's a recommended sentence. It's not binding on me. There's certain things here that kind of are binding on me like the maximum punishments, and where there's a minimum punishment, that's binding on me. But the stuff in terms of a recommendation from the guidelines, that's information I have to consider, but I don't have to follow it. But what I need you to understand is I don't know what your sentence is going to be as I sit here today. I really don't. Ms. Anjum may have some observations about watching [me]. I haven't been a District Judge that long. I used to be a Magistrate Judge. But there's some ability to kind of see what I do in other cases and maybe have an idea what you think I might do in this case. I promise you I don't know what it's going to be, so there's no way in heck anybody else in this room can know what it's going to be.

*Id.* at 28. The Defendant indicated he understood. *Id.* at 29.

Next, the Court reviewed the plea agreement with Steele. *Id.* at 30-41. He indicated he had enough time to review it and had discussed it with his attorney. *Id.* at 30. Before asking the AUSA to review the terms of the plea agreement, the Court told Steele: "If you hear something that isn't exactly the way you think it is, we need to figure out what's wrong, do you have a misunderstanding, is there something wrong with the document, this is just one last belt and suspenders chance to make sure that we are literally all on the same page[.]" *Id.* at 31. The AUSA's review included the following discussion regarding paragraphs twelve through seventeen of the plea agreement:

> MR. MELCHING: Paragraph 12 discusses the elements of the offenses to which the defendant will plead guilty.
>
> Sentencing ultimately rests within the discretion of this court. This Court will determine the applicable guideline range and sentence within it.
>
> * * *
>
> THE COURT: Time out. You just said something that's not exactly - - you said I'm going to determine the applicable guideline range and sentence within it. That's not necessarily true.
>
> MR. MELCHING: That's - -

3

| | | |
|---|---|---|
| THE COURT: | | I will determine it, and I will determine whether or not to sentence within it. |
| MR. MELCHING: | | Correct, Your Honor. I apologize for misspeaking. And to be absolutely clear, that was a mistaken phrase. This Court has the discretion to, within the statutory range, as it sees fit, while also determining the guideline range. |

> Paragraph 14 discusses grouping of Counts 1 and 3. The parties agree that Counts 1 and 3 group, pursuant to United States Sentencing Guidelines, ultimately that is only a recommendation. This Court will determine the guideline calculation as this Court sees clear.
>
> * * *
>
> At this time, as discussed in paragraph 17, United States Attorney's Office has no reason to believe defendant has not clearly affirmatively accepted personal responsibility, and will, if that continues agree to recommend a three-level reduction for acceptance of responsibility.

*Id.* at 33-34. Following the AUSA's review of the terms of the plea agreement, Steele affirmed the Government's description was consistent with what he understood to be the agreement's substance. *Id.* at 35. The Court then asked whether, and Steele denied that, his decision to change his plea was the result of any threat or promise not contained in the agreement:

| | |
|---|---|
| THE COURT: | Anybody threaten you to cause you to do this? |
| THE DEFENDANT: | No. It's taking accountability for my actions. |
| THE COURT: | I hear you. Anybody promise you anything other than what's contained in this document? |
| THE DEFENDANT: | No. |

*Id.* Following this review of the plea agreement's terms, as well as the factual basis underlying it, Steele initialed the bottom of each page of the agreement, which the Court noted meant "[he] agree[d] - - [he] understand[s] every word on this page and [he] agree[s] with it[.]" *Id.* at 40.

4

Finally, prior to his final signature on the agreement, the Court reviewed with Steele what his signature meant:

> THE COURT: You've already initialed it down there, Mr. Steele. Read carefully one more time what it says right above your signature there. Let's just read it together. I have read or had read to me this entire Plea Agreement and have discussed it with my attorney. I have initialed each page of the agreement to signify that I understand and approve the provisions on that page. I'm entering this agreement voluntarily and of my own free will. No threats have been made to me, nor am I under the influence of anything that could impair my ability to understand this agreement. Is that all true[?]
>
> THE DEFENDANT: True. Correct.
>
> THE COURT: Go ahead and sign that then and pass it around. Okay, Mr. Steele, I have received the Plea Agreement. I see your initials down at the bottom right corner of every page just like we talked about. Is this your signature I'm looking at on the last page?
>
> THE DEFENDANT: Yes, sir.

*Id.* at 40-41; *see also* Doc. 41, at 11. Steele then entered a plea of guilty to Counts 1, 3, and 4. (Doc. 86, at 41-42). And the Court again confirmed no one had promised Steele anything other than what was in the plea agreement. *Id.* at 42.

The Final Presentence Investigation Report ("PSR") prepared prior to sentencing references the 3 point reduction for acceptance of responsibility. (Doc. 48, at 4, 11, 18-19). At sentencing Steele confirmed he had read the PSR and had "no problem" with anything therein. (Doc. 87, at 7-8). And at sentencing, the Court again noted that there was no specific stipulation in the plea agreement as to the sentence. *Id.* at 25.

The PSR calculated Steele's Base Offense Level as 30, and Total Offense Level (after reduction for acceptance of responsibility) as 27. (Doc. 48, at 11). In combination with his

Criminal History Category of III, his guideline range was 87 to 108 months. *Id.* at 18. The mandatory minimum five year sentence on Count 4 remained to be served consecutively. *Id.*

At sentencing on October 4, 2023, after sustaining defense counsel's objection to the inclusion of fentanyl in the offense conduct, the Court determined Steele's Base Offense Level was 24, and his Total Adjusted Offense Level (after reduction for acceptance of responsibility), was 21. (Doc. 87, at 18-22). This reduced the guideline range to 46 to 57 months (again, with the additional mandatory minimum consecutive five years on Count 4). *Id.* at 23. The Court sentenced Steele to 48 months imprisonment on Counts 1 and 3, to run concurrently, and 60 months (the mandatory minimum) on Count 4, to run consecutively to Counts 1 and 3, plus three years' supervised release, for a total sentence of 108 months. (Doc. 57). In determining this sentence, the Court observed: "We've got the guideline driven down about as far as in good conscience I can see myself going just under the totality of the circumstances. And I don't believe that the low end of the guidelines here and the mandatory tag-on is inappropriate here." (Doc. 87, at 45).

Steele did not file a direct appeal.

In the instant Motion to Vacate, Defendant asserts a single ground for relief based on ineffective assistance of counsel:

> My attorney, Sarah Anjum, conveyed to me that if I were to enter a plea of guilty and accept responsibility, the Court would take 3 years off my sentence. This did not occur. I only later learned that I would receive three points off my "Offense Conduct" calculation by entering a guilty plea and accepting responsibility. I would not have entered a plea if I had been told that the plea would only result in a 3-point reduction in my offense conduct calculation.

(Doc. 83, at 5).

6

## STANDARD OF REVIEW

Under § 2255, "[a] prisoner in custody under sentence of a [federal] court . . . claiming the right to be released . . . may move the court which imposed the sentence to vacate, set aside[,] or correct the sentence." 28 U.S.C. § 2255(a). A court must vacate and set aside a sentence if it concludes the "judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack[.]"*Id.* at § 2255(b). To "obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982); *see also Hampton v. United States*, 191 F.3d 695, 698 (6th Cir. 1999).

A prisoner seeking relief under § 2255 must show as a basis for relief: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (citation modified). To obtain relief for an error of constitutional magnitude, a petitioner must establish that error "had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)). To obtain relief for a non-constitutional claim, a petitioner must establish a fundamental defect in the proceeding resulted in a complete miscarriage of justice or an egregious error that deprived him of the "rudimentary demands of fair procedure." *Reed v. Farley*, 512 U.S. 339, 348 (1994) (citation omitted); *see also id.* at 354.

In considering a petition under § 2255, the district court is required to conduct an evidentiary hearing to determine the issues and make findings of fact and conclusions of law

"[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]" 28 U.S.C. § 2255(b). The petitioner's burden for obtaining a hearing is relatively light. *Smith v. United States*, 348 F.3d 545, 551 (6th Cir. 2003). But "no hearing is required if the petitioner's allegations 'cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (quoting *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995)). Where the judge considering the § 2255 petition also conducted the proceedings below, the judge may rely on his or her recollections of those proceedings. *See id.*

## DISCUSSION

Steele raises a single claim of ineffective assistance of counsel, contending counsel advised him he would receive three *years* off his sentence for acceptance of responsibility rather than three *points* off his offense conduct calculation. (Doc. 83, at 5). He avers that he would not have entered the plea had he been provided the correct information. *Id.*

A defendant is entitled to effective assistance of competent counsel in plea negotiations. *Lafler v. Cooper*, 566 U.S. 156, 162-63 (2012). To demonstrate ineffective assistance of counsel, a petitioner "must show that counsel's performance was deficient . . . [and] that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish deficient performance, a petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Id.* To establish prejudice when a petitioner's ineffective-assistance claim involves the decision regarding whether to plead guilty, the petitioner must show a "reasonable probability" that but-for counsel's constitutionally ineffective performance, he would not have entered into the plea

agreement and pled guilty. affected the outcome of the plea process." *Smith*, 348 F.3d at 551 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

"Absent extraordinary circumstances, a defendant is bound by his statements during a plea colloquy when the district court has scrupulously followed the procedures for taking the defendant's guilty plea." *Ewing v. United States*, 651 F. App'x 405, 409 (6th Cir. 2016) (citing *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986)); *see also Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999) ("[A] defendant must be bound to the answers he provides during a plea colloquy."). "[A] claim of ineffective assistance of counsel predicated on allegedly misleading information given by counsel about the terms of a plea agreement can *never constitute* an 'extraordinary circumstance' under *Baker* when the court conducts a proper, clear, and thorough plea colloquy." *Ramos*, 170 F.3d at 565. Reliance on the defendant's after-the-fact claims of misrepresentation and a lack of understanding instead of the record of plea proceedings would "render[ ] the plea colloquy process meaningless, for any convict who alleges that he believed the plea bargain was different from that outlined in the record could withdraw his plea, despite his own statements during the plea colloquy . . . indicating the opposite." *Id.* at 566. Thus, in *Ramos*, the Sixth Circuit found "[e]ven under the assumption that Ramos has established deficient performance, he cannot establish that this alleged promise by [counsel] caused him prejudice" because "when a defendant denies knowledge of a plea agreement in reliance on his counsel's mistaken advice, this does not amount to prejudice when the court specifically informed him that his counsel's advice was incorrect." *Id.* at 565.

In *Ewing*, the petitioner argued his counsel "provided constitutionally ineffective assistance because [counsel] assured him he would receive a 144-month sentence." 651 F. App'x at 410. In evaluating this claim, the Sixth Circuit found:

9

> [T]he trial court's proper plea colloquy cured any misunderstanding Ewing may have had about the consequences of his plea. During the plea hearing, Ewing confirmed that he had reviewed the plea agreement with [counsel], that he understood the agreement's provisions, and that the plea was voluntary. The record also reflects that he was fully aware that no particular sentence was being promised when he entered the guilty plea and that the district judge, and no one else, would determine the final sentence.

*Id.* (internal citations omitted). It further concluded that "[b]ecause, under *Ramos*, Ewing is unable to show actual prejudice, his first ineffective-assistance claim is foreclosed and the district court did not abuse its discretion in denying an evidentiary hearing." *Id.* at 410 (internal citation omitted).

The same is true here. Steele is bound by the statements he made to this Court and in his plea agreement. And those statements "reflect[] that he was fully aware that no particular sentence was being promised when he entered the guilty plea and that the district judge, and no one else, would determine the final sentence." *Id.* Specifically, the plea agreement stated, *inter alia*, "Defendant understands that sentencing rests within the discretion of the Court . . . and that in determining the sentence, the Court may depart or vary from the advisory guideline range" and that the "USAO agrees to recommend a three (3) level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and (b) . . . Defendant understands it will be up to the Court at the time of sentencing to determine whether a reduction for acceptance of responsibility is appropriate." (Doc. 41, at 4-5). The AUSA's review of the plea agreement's terms during the change of plea hearing repeated this. (Doc. 86, at 33-34).

The Court further emphasized the lack of certainty regarding any potential sentence at the change of plea hearing: "I promise you I don't know what [your sentence] is going to be, so there's no way in heck anybody in this room can know what it's going to be", and Steele stated he understood. (Doc. 86, at 28-29).

10

The Court additionally cautioned Steele that, as the AUSA reviewed the plea agreement during the hearing: "If you hear something that isn't exactly the way you think it is, we need to figure out what's wrong, do you have a misunderstanding, is there something wrong with the document, this is just one last belt and suspenders chance to make sure that we are literally all on the same page." *Id.* at 31. During the hearing, Steele never indicated disagreement or confusion about the proposed acceptance of responsibility reduction (which, again, the plea agreement and discussion made clear was not guaranteed). Steele further attested that his decision to change his plea was not the result of any promise other than what was contained in the plea agreement document. *Id.* at 35, 42.

Under these circumstances, the Court finds the record conclusively refutes Steele's claim of ineffective assistance of counsel based on allegedly misleading information about his potential sentence and he cannot show prejudice. *See Ewing*, 651 F. App'x at 410.

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Defendant's Motion to Vacate (Doc. 83) be, and the same hereby is, DENIED;

FURTHER ORDERED that, because Steele has not made a substantial showing of a denial of a constitutional right directly related to his conviction or custody, no certificate of appealability shall issue. 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b).

 s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE

Dated: October 1, 2025